[Cite as *State v. Rawlins*, 2024-Ohio-1733.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-22-77

    v.

JOURDYN I. RAWLINS,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2021 0199

Judgment Affirmed

Date of Decision:  May 6, 2024

APPEARANCES:

    *Zachary D. Maisch* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Jourdyn I. Rawlins ("Rawlins"), appeals the December 6, 2022 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a May 26, 2021 rape offense. The victim and Rawlins attended high school together; however, both were over the age of 18 at the time of the offense at issue in this case. On May 26, 2021, Rawlins contacted the victim through Facebook messenger, asking her "to hang out" with him. (Oct. 11-14, 2022 Tr., Vol. II, at 512). When the victim agreed, Rawlins drove the victim to his residence and ultimately the couple went into Rawlins's bedroom. Once there, Rawlins "asked [the victim] to cuddle" and she agreed. (*Id.* at 532). Thereafter, and according to the victim, Rawlins asked if he could "put the tip in" (referencing his penis) but she responded "no, because [she was] on [her] period." (*Id.*). This made the victim "uncomfortable," so she "scooted away from him." (*Id.*). Rawlins responded by "grabbing [her] again" and "[p]ulling [her] up to cuddle with him," to which she told him that she did not "really want to cuddle." (*Id.*). Thereafter, Rawlins straddled "on top of [the victim's] legs," and (without her permission) took her shirt off and pulled her pants down. (*Id.* at 534). Even though the victim protested, Rawlins "forc[ed] himself in" her. (*Id.* at 540).

{¶3} On June 17, 2021, the Allen County Grand Jury indicted Rawlins in case number CR2021 0199 on a single count of rape in violation of R.C. 2907.02(A)(2), (B), a first-degree felony. On June 22, 2021, Rawlins filed a written plea of not guilty to the indictment.

{¶4} However, prior to the indictment in case number CR2021 0199, a complaint was filed in the Allen County Court of Common Pleas, Juvenile Division, on January 27, 2021 charging Rawlins with a single count of rape (involving a different victim) in violation R.C. 2907.02(A)(2), a felony of the first degree if committed by an adult. On April 19, 2021, Rawlins appeared by remote contemporaneous video and denied the charge in the complaint.

{¶5} On June 8, 2021, the State filed a notice of permissive bindover in the juvenile case. Following a probable-cause hearing on July 19, 2021, the juvenile court on July 20, 2021 concluded that there was probable cause to believe that Rawlins committed the conduct alleged in the complaint. Thereafter, following an amenability hearing on October 7, 2021, the juvenile court on October 14, 2021 granted the State's transfer motion and ordered that the case be transferred to the Allen County Court of Common Pleas, General Division, for Rawlins to be tried as an adult.

{¶6} Subsequently, on November 10, 2021, the Allen County Grand Jury indicted Rawlins in case number CR2021 0372 on a single count of rape in violation

of R.C. 2907.02(A)(2), (B), a first-degree felony. On November 17, 2021, Rawlins filed a written plea of not guilty to the indictment.

{¶7} Regardless, while case number CR2021 0372 was pending in juvenile court, Rawlins filed a motion to suppress evidence (in the juvenile court) on May 28, 2021. The State filed a memorandum in opposition to Rawlins's motion to suppress on June 16, 2021. After a hearing on February 25, 2022, the trial court denied Rawlins's motion to suppress.

{¶8} On March 11, 2022, the State filed a motion (in both cases) to join the cases for purposes of trial. Rawlins filed a memorandum in opposition (in both cases) to the State's request on March 25, 2022, and the trial court granted the State's motions and joined the cases for purposes of trial on May 2, 2022.

{¶9} Ultimately, the cases proceeded to a jury trial on October 11-14, 2022. On October 14, 2022, the jury found Rawlins guilty of the count alleged in the indictment in case number CR 2021 0199 but not guilty of the count alleged in the indictment in case number CR 2021 0372. On December 6, 2022, the trial court sentenced Rawlins to a minimum term of 10 years to a maximum term of 15 years in prison in case number CR2021 0199. The trial court also classified Rawlins as a Tier III sex offender.

{¶10} Rawlins filed his notice of appeal on December 15, 2022 in case number CR2021 0199. He raises four assignments of error for our review. For ease

of our discussion, we will address Rawlins's first and fourth assignments of error, followed by his second and third assignments of error together.

**First Assignment of Error**

**The Tiral [sic] Court Erred In Joining The Cases For Purposes of Trial.**

{¶11} In his first assignment of error, Rawlins argues that he was unfairly prejudiced by the trial court's decision to join the cases for purposes of trial. Specifically, Rawlins contends that the trial court's joinder of the cases for purposes of trial was not only untimely but also permitted the jury to "improperly consider[] testimony on one offense as corroborative of the other." (Appellant's Brief at 5).

*Standard of Review*

{¶12} "Issues of joinder and severance are generally reviewed under an abuse of discretion standard." *State v. Plott*, 3d Dist. Seneca No. 13-15-39, 2017-Ohio-38, ¶ 52. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶13} "In general, the law favors joining multiple offenses in a single trial if the offenses charged 'are of the same or similar character.'" *State v. Valentine*, 5th Dist. Fairfield No. 18 CA 27, 2019-Ohio-2243, ¶ 43, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990). "Under Crim.R. 13, a trial court may order two or more indictments to be tried together 'if the offenses or the defendants could have been

joined in a single indictment or information.'"  *Plott* at ¶ 54, quoting Crim.R. 13.

"Two or more offenses may be charged in the same indictment if they are of 'the

same or similar character, or are based on the same act or transaction, or are based

on two or more acts or transactions connected together or constituting parts of a

common scheme or plan, or are part of a course of criminal conduct.'"  *Id.*, quoting

Crim.R. 8(A).

{¶14} "Nonetheless, if it appears that a criminal defendant would be

prejudiced by such joinder, then the trial court is required to order separate trials."

*Valentine* at ¶ 44, citing Crim.R. 14.

> To prevail on a motion to sever, a defendant has the burden of demonstrating that "(1) his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial."

*Plott* at ¶ 55, quoting *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992).  "A defendant's

claim of prejudice is negated when:  (1) evidence of the other crimes would have

been admissible as 'other acts' evidence under Evid.R. 404(B) or (2) the evidence

of each crime joined at trial is simple and direct."  *State v. Ahmed*, 8th Dist.

Cuyahoga No. 84220, 2005-Ohio-2999, ¶ 22.  *See also Valentine* at ¶ 45 (addressing

that "[t]he state may negate claims of prejudicial joinder in two ways").

**{¶15}** "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23.

**{¶16}** "'Under the second method, the "joinder" test, the state is merely required to show that evidence of each crime joined at trial is simple and direct.'" *Valentine* at ¶ 47, quoting *Lott*, 51 Ohio St.3d at 163. The Supreme Court of Ohio has unequivocally stated "that 'when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Id.*, quoting *Lott* at 163. "Evidence is 'simple and direct' if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would 'improperly consider testimony on one offense as corroborative of the other.'" *Id.*

at ¶ 48, quoting *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52.

**{¶17}** "Courts have held that evidence of multiple offenses is 'simple and direct' where, for example, the offenses involved different victims, different incidents or factual scenarios, and different witnesses." *Id.* at ¶ 49, citing *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 23 (concluding that the defendant was not prejudiced by the joinder because "[t]he evidence relating to each incident was simple and direct:  the incidents occurred separately, involved different victims, and different eyewitnesses independently identified defendant as the shooter at each incident") and *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33 ("Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.").

**{¶18}** "If either the 'other acts' test or the 'simple and direct' test is met, a defendant cannot establish prejudice from the joinder." *Id.* at ¶ 50.  *See also Lott* at 163 ("Under the second method, the 'joinder' test, the state is not required to meet the stricter 'other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct.").

**{¶19}** As an initial matter, Rawlins argues that the State's motions to join the cases for purposes of trial were untimely under Crim.R. 12(D). That rule "requires that most motions 'be made within thirty-five days after arraignment or seven days before trial, whichever is earlier.'" *State v. Blackmon*, 6th Dist. Lucas No. L-19-1036, 2020-Ohio-2857, ¶ 14, quoting Crim.R. 12(D). However, "the rule explicitly allows a trial court to extend that time 'in the interest of justice.'" *Id.*, quoting Crim.R. 12(D).

**{¶20}** Decisions regarding the timeliness of motions under Crim.R. 12(D), "'is a matter committed to the sound discretion of a trial court and is subject to review on appeal on an abuse of discretion standard.'" *State v. Pope*, 6th Dist. Erie No. E-22-016, 2023-Ohio-865, ¶ 18, quoting *State v. Davis*, 6th Dist. Ottawa No. OT-09-032, 2010-Ohio-4383, ¶ 41. Again, for this court to conclude that the trial court abused its discretion, we must determine that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157.

**{¶21}** In this case, Rawlins contends that the State's motions to join the cases for purposes of trial were untimely because he was arraigned on November 17, 2021 and the State did not file its motions until March 11, 2022. However, even assuming without deciding that the State's motions to join the cases for purposes of trial were untimely, the trial court did not abuse its discretion by considering the State's joinder motions. *See State v. Bennett*, 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 19. Importantly, Rawlins was not prejudiced by the State's motions to

join the cases for purposes of trial since the motions were filed seven months before trial and shortly after the trial court denied Rawlins's motion to suppress evidence. *See Blackmon* at ¶ 14.

{¶22} Specifically, case number CR2021 0372 was bound over from juvenile court on October 14, 2021. Following the bindover from juvenile court, Rawlins was indicted in the Allen County Court of Common Pleas, General Division, on November 11, 2021 and he was arraigned on November 17, 2021. Nevertheless, while that case was pending in the juvenile court, Rawlins filed a motion to suppress evidence in the juvenile court. The trial court ultimately denied Rawlins's motion to suppress evidence on February 25, 2022 and, based on the trial court's denial of the suppression motion, the State filed its motions to join the cases on March 11, 2022. Critically, the cases did not proceed to trial until October 11, 2022. Therefore, Rawlins's argument under Crim.R. 12(D) lacks merit.

{¶23} Furthermore, based on our review of the record, we conclude that the trial court did not abuse its discretion by joining the cases for purposes of trial. Here, the trial court joined case numbers CR2021 0199 and CR2021 0372, which involved similar offenses. Specifically, Rawlins was charged with rape in violation of R.C. 2907.02(A)(2) in both cases, occurring separately and with different victims. *Accord State v. Gideon*, 3d Dist. Allen No. 1-18-27, 2021-Ohio-1863, ¶ 12; *State v. N.S.*, 10th Dist. Franklin No. 20AP-66, 2020-Ohio-5318, ¶ 37 (concluding that "the sexual assaults on each of the two victims were so similar as to the time, place, and

-10-

manner of commission that the evidence offered to prove the forcible rape and kidnapping charges in one indictment disclosed purposeful action on the part of appellant to commit forcible rape and kidnapping in the other").

{¶24} In its entries joining the cases for trial, the trial court concluded that joinder was appropriate under the other-acts test. Importantly, the trial court resolved that evidence of the offenses would be admissible at trial as other acts evidence under Evid.R. 404(B)—that is, the trial court concluded such evidence would be admissible at separate trials under Evid.R. 404(B) to prove Rawlins's intent.

{¶25} The trial court's conclusion that the evidence of the rape offenses would be admissible at trial under Evid.R. 404(B) as evidence of Rawlins's intent is not unreasonable, arbitrary, or unconscionable. *See State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 108. Simply put, the evidence that the State intended to introduce at trial in case number 2021CR 0199 would be admissible to prove Rawlins's *intent* to engage in non-consensual sex with the victim in case number 2021CR 0372. *Accord N.S.* at ¶ 37 (resolving that "the proffered evidence in support of the rape and kidnapping convictions in case No. 19CR-0880 would be admissible, under Evid.R. 404(B), when offered to prove appellant's intent to engage in non-consensual sex with the victim in case No. 18CR-4943"); *Ahmed*, 2005-Ohio-2999, at ¶ 25 (concluding that "the evidence of each sexual offense would have been

admissible at separate trials under Evid.R. 404(B) in order to prove Ahmed's motive, intent, and plan").

**{¶26}** Moreover, the trial court cautioned the jury to consider each count, and the evidence applicable to each count, separately. *See State v. Wilson*, 5th Dist. No. 16-CAA-08-0035, 2017-Ohio-5724, ¶ 53 ("'Courts have held that any prejudice that results from the joinder of offenses is minimized when a trial court cautions a jury before deliberations to consider each count, and the evidence applicable to each count separately, and to state its findings as to each count uninfluenced by its verdict on any other counts.'"), quoting *State v. Freeland*, 4th Dist. Ross No. 12CA003352, 2015-Ohio-3410, ¶ 16. "[W]e presume that the jury followed the [trial] court's instructions." *Valentine*, 2019-Ohio-2243, at ¶ 57, citing *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 192. Indeed, contrary to Rawlins's contention that "the cumulative effect of the testimony from the unrelated acts led to the split verdict," our presumption that the jury followed the trial court's instructions *is* bolstered by the jury's not-guilty finding as to one of the two cases that it considered. *See Gideon*, 2021-Ohio-1863, at ¶ 14; *State v. Powell*, 8th Dist. Cuyahoga No. 107276, 2019-Ohio-4345, ¶ 78 (concluding that "although Powell was found guilty for the rape and kidnapping of D.E., the jury found him not guilty of the rape and kidnapping charges associated with A.W.," which "reflects the jury's ability to segregate the proof required in each case").

{¶27} As a result, because it is dispositive, we need to address only the trial court's determination that joinder was appropriate under the other-acts test. *See Gideon* at ¶ 15. Therefore, since the evidence of each offense would have been admissible at separate trials under Evid.R. 404(B), Rawlins was not prejudiced by the joinder of the cases for purpose of trial. *See id.*; *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 50. Accordingly, the trial court did not abuse its discretion by joining case numbers 2021CR 0199 and 2021CR 0372 for purposes of trial. *Accord N.S.* at ¶ 37; *State v. Pate*, 2d Dist. Montgomery No. 28702, 2021-Ohio-1838, ¶ 56.

{¶28} Rawlins's first assignment of error is overruled.

**Fourth Assignment of Error**

**The Verdict Is Against The Manifest Weight of the Evidence.**

{¶29} In his fourth assignment of error, Rawlins argues that his rape conviction is against the manifest weight of the evidence. Specifically, Rawlins contends that the weight of the evidence reflects that he did not engage in vaginal intercourse with the victim since the DNA evidence reflects that there was no penetration.

*Standard of Review*

{¶30} When determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and

determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶31} Rawlins was convicted of rape in violation of R.C. 2907.02(A)(2), which provides, in its relevant part, that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). R.C. 2907.01(A) defines "sexual conduct," in relevant part, as "vaginal intercourse between a male and female * * * ." It further defines that "[p]enetration, however slight, is sufficient to complete vaginal * * * intercourse." R.C. 2907.01(A). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the

offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶32}** On appeal, Rawlins argues only that the weight of the evidence reflects that he did not engage in vaginal intercourse with the victim. Specifically, Rawlins contends that the weight of the evidence reflects that there was no penetration since "none of [his] DNA was present on [the victim's] vaginal samples * * * ." (Appellant's Brief at 11). *Compare State v. Horsley*, 4th Dist. Scioto No. 16CA3787, 2018-Ohio-1591, ¶ 66 (raising the argument that the evidence weighed against the conclusion that Horsley penetrated the victim because "the rape kit bore no evidence of rape and vaginal swabs showed no Y-Chromosome, which he contends is proof that 'there was no sign of male penetration, and no DNA foreign to the alleged victim'").

**{¶33}** However, based on our review of the record, we conclude that any absence of DNA evidence does not outweigh the conclusion that Rawlins engaged in vaginal intercourse with the victim. *Accord State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 54 (concluding that, even though "there is no DNA or medical evidence corroborating [the victim's] allegations does not weigh against White's convictions"); *Horsley* at ¶ 72 (determining that "the absence of semen or Y-Chromosome identified in the rape kit analysis" "do not prove there was no sign of male penetration"). Critically, "[c]onvictions for rape often are decided in terms of credibility. Physical DNA evidence is not needed in order to sustain a conviction

for rape." *State v. Speed*, 8th Dist. Cuyahoga No. 83746, 2004-Ohio-5211, ¶ 36. *See also State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 31 (resolving that "physical evidence is not required to support a rape conviction against a manifest weight challenge"). Consequently, "[t]he mere fact that none of [Rawlins's] DNA was found inside of the victim is not evidence that a rape did not occur." *Speed* at ¶ 36.

{¶34} Indeed, "[a]s with many sexual-abuse cases, this case presents the 'classic "he-said/she-said"' scenario, 'with [little or] no physical evidence to corroborate the [victim's] allegation[s].'" *White* at ¶ 50, quoting *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, 2010-L-035, and 2010-L-041, 2011-Ohio-6845, ¶ 79. "'Thus, credibility of the witnesses was the primary factor in determining guilt.'" *Id.*, quoting *In re N.Z.* at ¶ 79.

{¶35} As we noted above, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "'When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."'" *White* at ¶ 50, quoting *In re N.Z.* at ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "'A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it.'" *Id.*, quoting *In re N.Z.* at ¶ 79. "'"A verdict is not against the manifest weight of the evidence

because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events.'"" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

**{¶36}** In this case, the jury heard the victim's testimony that she unequivocally told Rawlins that she did not want to engage in sexual conduct with him; the expert and medical testimony regarding the physical findings and DNA evidence; and Rawlins's version of the events. *Compare Horsley*, 2018-Ohio-1591, at ¶ 73 (noting that "the jury heard all of the expert and medical testimony regarding the physical findings and DNA testing, and listened to Appellant's testimony which offered an alternative explanation of the presence of his semen on the victim's bed sheets and dress"). It is evident that the jury "rejected [Rawlins's] version of events, which decision was within their province as the trier of fact." *Id. See also White* at ¶ 51 (resolving that White's rape and gross-sexual-imposition convictions were not against the manifest weight of the evidence because the trier of fact found the victims credible).

**{¶37}** For these reasons, Rawlins's argument is unpersuasive. Accordingly, we conclude that the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that Rawlins's rape conviction must be reversed and a new trial ordered.

{¶38} Rawlins's fourth assignment of error is overruled.

## Second Assignment of Error

**The Trial Court Erred in Prohibiting Testimony Regarding the Victim's Past Consensual Sexual Activity With The Appellant As It Violated This Sixth Amendment Right Of Confrontation.**

## Third Assignment of Error

**The Trial Court Erred In Giving A Curative Instruction From The Bench Regarding The Testimony About The Victim's Past Sexual Activity With Appellant.**

{¶39} In his second and third assignments of error, Rawlins argues that the trial court erred by excluding the victim's testimony regarding her prior sexual activity with Rawlins. In particular, in his second assignment of error, Rawlins contends the trial court erred by excluding the victim's testimony under Ohio's rape shield law because the "evidence of the accuser's past sexual history was directly related to the issue of consent because it concerned her prior consensual acts with [Rawlins]." (Appellant's Brief at 8). Rawlins specifically argues in his third assignment of error that the trial court erred by instructing the jury to disregard the victim's testimony regarding her prior sexual activity with Rawlins.

*Standard of Review*

{¶40} Generally, the admission or exclusion of evidence—including evidentiary decisions on the rape-shield law—lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material

prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62; *State v. Schroeder*, 4th Dist. Adams No. 18CA1077, 2019-Ohio-4136, ¶ 19 ("We review the trial court's rape shield rulings under R.C. 2907.02(D) for an abuse of discretion."). Again, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157-158.

{¶41} "However, when a criminal defendant claims that an evidentiary decision violated his or her constitutional rights, such as those under the Confrontation Clause, a de novo standard of review applies." *State v. McNeal*, 2d Dist. Montgomery No. 28123, 2019-Ohio-2941, ¶ 31. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

*Analysis*

{¶42} "The rape shield law prohibits any evidence of a victim's sexual history except to show 'the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender.'" *State v. Black*, 172 Ohio App.3d 716, 2007-Ohio-3133, ¶ 12 (3d Dist.), quoting R.C. 2907.02(D). "Even if one of the aforementioned exceptions applies, such evidence may be introduced only if the court determines that the evidence is material to a fact at issue and that its prejudicial nature does not outweigh its probative value." *Id.*

{¶43} "However, application of the rape shield law may not 'unduly infringe upon a defendant's constitutional rights.'" *Id.*, quoting *In re Michael*, 119 Ohio App.3d 112, 118 (2d Dist.1997). "'The Confrontation Clause of the Sixth Amendment to the United States Constitution gives the accused the right to be confronted with the witnesses against him.'" *McNeal* at ¶ 34, quoting *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 83. "Even so, '[t]he rights to confront witnesses and to defend are not absolute and may bow to accommodate other legitimate interests in the criminal process.'" *Id.*, quoting *State v. Boggs*, 63 Ohio St.3d 418, 722 (1992). "Thus, the trial court 'must balance the interests of the law against the probative value' of the excluded evidence." *Black* at ¶ 12, quoting *State v. Gardner*, 59 Ohio St.2d 14, 17-18 (1979). *See also In re Michael* at 119 ("A defendant has no Sixth Amendment right to confront a witness with irrelevant evidence.").

{¶44} In this case, the trial court applied the rape-shield law to exclude the victim's testimony regarding her prior sexual activity with Rawlins. Specifically, during the trial, the victim testified on cross-examination that she and Rawlins "used to mess around sexually" "three or four years" prior to the incident in this case. (Oct. 11-14, 2022 Tr., Vol. II, at 554). The State and Rawlins's defense counsel were unaware of Rawlins and the victim's prior history of sexual activity. Nevertheless, because the State objected to the victim's testimony, the trial court, after conducting a hearing (for good cause shown) outside the presence of the jury,

concluded that "the inflammatory or prejudicial nature of [the victim's] testimony outweighs its probative value. Not because consent isn't material, but simply because the length of time it's tenuously connected in that matter." (Oct. 11-14, 2022 Tr., Vol. III, at 584),

{¶45} On appeal, Rawlins contends that evidence of his past sexual history with the victim was a material issue of fact because he raised the defense of consent. Relevantly, "the past history of sexual activity between the defendant and the victim is not a material issue of fact unless the defense of consent is raised." *State v. Yenser*, 176 Ohio App.3d 1, 2008-Ohio-1145, ¶ 4 (3d Dist.). "Where the defense of consent is raised, the materiality and relevance of prior, consensual sexual acts between the victim and the defendant may be admissible." *Id.* "The court, in determining whether prior acts should be admitted, must balance the interests of the victim, which the statute is designed to protect, and the defendant's right to confront and cross-examine the state's witnesses." *Id.* "If the evidence in question is merely being used to impeach the victim's credibility, it is not of probative value as to the alleged rape itself and should not be admitted." *Id.* "However, if the evidence has probative value to the determinative issue of fact—i.e., whether the victim was raped by the defendant on the date alleged—then the probative value of the testimony outweighs any interest the state has in exclusion." *Id.*

**{¶46}** Contrary to Rawlins's argument under his second assignment of error, Rawlins did *not* raise consent as a defense in the trial court. Critically, Rawlins maintained at trial (and on appeal) that "there was no penetration at any time during the period of time [the victim] was at his residence." (Appellant's Brief at 2). Furthermore, as we addressed in his fourth assignment of error, Rawlins argued that his conviction is against the manifest weight of the evidence because there was no evidence of penetration.

**{¶47}** Consequently, based on our review of the record, we conclude that the trial court did not abuse its discretion by excluding the victim's testimony regarding her prior sexual activity with Rawlins under the rape-shield law. Importantly, under the specific facts and circumstances presented, the probative value of the history of sexual activity between Rawlins and the victim is outweighed by the inflammatory or prejudicial value of that testimony. *See In re C.Q.*, 5th Dist. Licking No. 2020 CA 00012, 2020-Ohio-5531, ¶ 27.

**{¶48}** Indeed, when "assessing the probative value of the excluded evidence, the key is its relevancy as proof of the matters for which it is offered." *In re Michael*, 119 Ohio App.3d at 119. Importantly, "testimony to be relevant to the issue of intent, it must have such a temporal, modal and situational relationship with the acts constituting the crime charged * * * .'" *State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 50, quoting *State v. Gardner*, 59 Ohio St.2d 14, 20 (1979). Our review of the nature of the victim's testimony regarding her prior

sexual activity with Rawlins reveals that the testimony was not probative of whether Rawlins raped the victim in *this* case. That is, the temporal, modal, and situational nexus between Rawlins and the victim's prior sexual activity and the sexual conduct in this case is tenuous at best. Thus, the victim's testimony regarding her prior sexual activity with Rawlins would have been more inflammatory or prejudicial than of probative value in this case.

{¶49} For these reasons, we conclude that the trial court's exclusion of the victim's testimony regarding her prior sexual activity with Rawlins under the rape-shield law did not unconstitutionally infringe on his right to present a defense. *See Black*, 172 Ohio App.3d 716, 2007-Ohio-3133, at ¶ 15. Therefore, the trial court did not abuse its discretion by excluding the victim's testimony regarding her prior sexual activity with Rawlins under the rape-shield law.

{¶50} Moreover, based on our determination that the trial court did not abuse its discretion by excluding the victim's testimony regarding her prior sexual activity with Rawlins under the rape-shield law, the trial court did not abuse its discretion by instructing the jury to disregard the victim's testimony regarding her prior sexual activity with Rawlins. *See State v. Ball*, 3d Dist. Allen No. 1-21-16, 2022-Ohio-1549, ¶ 36 (concluding that a "violation did not occur; therefore, no remedy was needed").

{¶51} Accordingly, Rawlins's second and third assignments of error are overruled.

{¶52} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and HESS, J.J., concur.**

**\*\*Judge Michael D. Hess of the Fourth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**